May it please the Court, Eric Chaplin on behalf of State Court Prisoner Guillermo Solorio. For one moment, I'd like to provide some context with respect to the hearsay, the error, and the prejudice, and then I'd like to spend the rest of my time discussing the AEDPA. I think this case provides the panel with an interesting, unique opportunity to help define the law with respect to what is a unreasonable application of clearly established federal law. The hearsay of this case occurred in private conversations between Chente, the murder victim, and Memo. Chente and Memo were rival gang members. They were also partners in the drug trade. Memo was also a known police informant who testified to the statements at trial. The statements were this. Chente said, Memo, I'm supposed to kill you, but I won't, and I can't because we're such good friends. And for that, my life is in danger. My gang is going to have me killed. And in fact, it's the guys outside, which included my client, Mr. Solorio, who are going to do it. The hearsay had to bear particularized guarantees of trustworthiness, and yet Chente had clear motives to lie. Talking to his partner in the drug trade and also a member of a rival gang, he certainly had an interest in incurring loyalty in this individual. Also talking to a known police informant, he had reason to shift suspicion for upcoming criminal activity onto someone else. The error, I think, is clear. The prejudice is also clear, because this was the centerpiece of the State's case. All the trial testimony was focused on getting Memo's testimony into the record. Several other witnesses testified in a manner to corroborate Memo's testimony. He had said these things about Chente many times before. It was also the first fact that the prosecutor turned to in closing argument and relied on heavily. It was the only evidence of motive in an otherwise circumstantial case, and it was the only accusation against my client that he would have been the one to have committed the crime. The State, in response to that, essentially ignores the error and the prejudice and hides behind AEDPA. But the California Court of Appeals' application of Roberts was objectively unreasonable. First, it ignored the motive to lie. Consideration of that factor is a requirement under O'Hivey-Roberts and Ihovey-Wright. But more importantly, and what I want to focus the rest of my time on, is that when you evaluate the trustworthiness, the fact that he got killed, does that give any trustworthiness to his statement? Well, in doing that, you're violating Idaho v. Wright, Lee v. Illinois, which says you cannot look beyond the statement to corroborate the statement. You have to look at the circumstances surrounding the statement. Other evidence in the case cannot be used to corroborate that. That is, and in fact, this Court in foreign has held that looking to other evidence in that manner is a violation of AEDPA. Now, I want to focus on what the Court of Appeal did in order to find particularized guarantees of trustworthiness, because I will submit that in doing so, each one of the particularized guarantees that it found were based on logical errors. And I think we would all agree that logical errors are objectively unreasonable. And so I want to walk through the Court of Appeal's opinion quickly. It's at ER 345, if you want to refer to it later. But the first thing that the Court of Appeal did is it relied on generalized guarantees rather than particularized guarantees. It said this is a statement against social interest, and therefore, quote, generally it would appear that such a statement would bear particularized indicia reliability. But statements against social interest do not fall within the firmly rooted set of hearsay exceptions. And therefore, the Supreme Court has required that you can't make generalizations about statements that fall within those other categories. You have to look to the particularized facts. And a Wisconsin court doing the same, precisely the same thing with respect to statements against social interest, reversed the denial of a habeas petition on collateral review under AEDPA saying that that was an objectively unreasonable application of Ohio v. Roberts and Idaho v. Wright. And that's Burillo v. Frank. The second thing that the Court of Appeal did is it relied on circular logic. And I want to really walk through this to make sure we all see why the Court of Appeal's opinion is based on essentially question begging. It did so when reasoning that Chente's hearsay was against his social interest and was therefore inherently trustworthy. And the California Court of Appeal relied on evidence in the record that if Chente was supposed to kill Memo and he was divulging gang secrets, that would subject him to retaliation. But the important point of that evidence is that it was conditional in nature. If the gang, the gang would be upset only if it was going to hit a particular person and that information was released. Thus, Chente would be in trouble for saying what he did to Memo only if he was, in fact, divulging a gang secret. So what the California Court of Appeal did was it simply assumed that Chente was telling the gang secret in order to conclude that the statement was against his social interest and therefore inherently trustworthy. So it assumed the truth of the statement in order to infer trustworthiness. That's question begging. It's circular. And I think we would all submit objectively speaking, it's unreasonable. Statements against social interest are against your interest whether or not they're true. Can you consider the context of where the comment was made in terms of he, you know, takes them apart, closes the door, you know, it's the two of them, you know, can you consider that? Absolutely. And I would submit to you that the court's reliance on those, quote, unquote, demeanor pieces of evidence was completely irrational. Because the demeanor evidence is this. Chente makes these statements after closing the door to the gang members who are right outside the door, asking for the gun, hemming and hawing about it, and then saying, Memo, I can't do it, and giving the gun back. And then telling Memo the story about how he's supposed to knock Ma up but can't do it. Chente would do those things whether or not he was lying or telling the truth. Because even if lying, he would want to do those things to sell the lie. How could he incredibly say that the gang's ordered me to hit you but I'm not going to do it when a couple members of the gang are sitting right outside? His statements were considered. I would submit that they were calculated. I would also submit that his actions and his demeanor around which he made those statements were also calculated. And given that the actions are equally consistent with truthfulness as they are with a lie, it would be irrational for the court to place any emphasis in those factors. I'm an antitrust lawyer, so I think of Matsushita in that situation. What about understanding of the gang culture? Is that something that you can factor in to determining the truthfulness? Well, I would say that as opposed to say it was you and I having the conversation, and I'm assuming we're not together, there's evidence of how gangs work, the gang culture and all of that. Can that be factored in? I would say when considering the circumstances of a statement, certainly one of the factors you would consider is that they were both gang members. And in fact, they shouldn't have been talking to one another because they were members of rival gangs. And therefore, Chente had a real need to engender some trust and loyalty in this individual who was supposed to kill him. So he had an additional motive to lie in that situation. I have a minute, 38 seconds. I'd like to save it, if I could. In the state? May it please the court. My name is Pam Critchfield. I represent Respondent Appali Warden. I believe that the gist of Petitioner's argument is that the victim, Chente's statement, as Petitioner, violates the Confrontation Clause because the statements are self-serving, exculpatory, lacked corroborating evidence to confirm their trustworthiness. These are simply alternative explanations for the California Court of Appeals determination that the statements, in fact, showed that or that the statements were inherently, that were reliable and there was sufficient indicia of reliability around them, partly or largely because of the context they were made in, that they not only didn't violate or came in under a hearsay exception, but also didn't violate the Confrontation Clause. I think under the ADPA standard, the, which, if you look at the state of California, the state of California, is really at the forefront here. This Court must defer to the State Court of Appeals determination to determine whether it was objectively unreasonable. We submit that it was not under these circumstances. Well, I think the argument is it can be objectively unreasonable if the steps taken do not logically follow in the context in which the statement was made. And is that an appropriate examination under ADPA to make to determine the reasonableness of the State Court determination? I would answer that, Your Honor, by stating that the State Court logically looked at this and analyzed the, whether there was, whether what Chinti said was reliable and whether there were particularized guarantees of reliability around it, and determined that there were because of the statement itself and the circumstances under which it was made. And I think the Court determined that the statement itself would subject the Vic Chinti to such social, well, to hatred, ridicule or social disgrace, and in this case, actual physical retaliation, that that in itself made it reliable, and then also the circumstances under which it was made and the gang context that it was made in. But why isn't that circular logic, as your opponent suggests? In other words, you're saying essentially that if we believe the statements are true, then that's the guarantee of their trustworthiness. Why should we credit that as an explanation or an issue of trustworthiness? Well, because it's, I also... If you don't believe the statements are true, then, of course, it falls apart. If you do believe it's true, then it's a guarantee, it's used as, it's an addition that they are true. I mean, that's the argument. Right. But I believe that the statements, if you look at the statement itself and how it was made, you have to look at that to determine whether it's true or not. But if you look, they're completely speculative and they're alternative, and they're alternative explanations. But we don't know if it was true or not. And the California Court of Appeals is saying because it would expose him to so much danger, if it was true, he wouldn't say it. But your opponent is saying if it wasn't true, maybe it was a ploy he was using as a drug dealer to curry favor with someone else. True. However, does the rest of the evidence support that? But can we look at the rest of the evidence in determining the truth or falsity of that statement? I think you can look at the gang context that it was made in, the gang evidence that was the gang testimony, which is that gang members, if they can't divulge, they're not allowed to divulge confidential information. And if they do divulge confidential information, they'll be retaliated against for it. But if it's not confidential information, if it's a pack of lies, then there's no retaliation, right, from the gang? Right. If it's a pack of lies used simply to curry favor with Memo. But what is the evidence that this was a statement to curry evidence with Memo? Well, what's the – I mean, there's as much basis for that as there is a basis for saying that he was really there to kill Memo, isn't there? I don't believe so. No, no, no. This is a statement. The state of the evidence, how much later is he killed? Three days. Very shortly afterwards. Three days afterwards. All right. And apart from that statement, what is the evidence that connects the appellant to the murder? It's circumstantial, but strong. All right. Circumstantial evidence is admissible. What is the circumstantial evidence? The other statements that Memo made to Officer Solis, the statement that Chente made to his cousin, Simon Hurtado, which are not at issue here, the gang testimony that both – they were members of a gang. They were friends. They attended a barbecue the day before the murder and left together, obtained guns when they came – a .38 and an Uzi when they came back, the three, the petitioner, the victim, and a third member. They left together on the day of the murder to go to Modesto to – in some drug – to carry out a drug deal. They went to Modesto. They returned. They were seen – a car was seen on Highway 152 along with three or four people, and the car sped off. The defendant or the petitioner and the other member showed up at the orchards the next morning and burned the clothing and were heard saying that he's finally gone. And that's corroborated by – All right. And also, I mean, you're sort of saying this, but wasn't – they're the last people that the victim was seen alive with? Yes. And he was found in the same clothes when he died that he left in that day. But what clothes was being burned? Their own clothes were being burned, apparently. All right. Was there any ballistics? No. Well, except that the gun was a .38, that was used was most likely a .38, and the gun wasn't found. It was not retrieved. Okay. Thank you. Are there any further questions? I would submit it. Let me ask you, if we should find that the admission of the statement was error, was it harmless error? Absolutely. And the standard is Brecht. And I have gone through – I've just gone through some of the evidence. I think there's more evidence than that to support it. I think there was two questions in this case. But without this evidence, there's not much evidence of motive, is there? But the questions in this case were, who did it and was it gang-related? And I think if you read the district attorney's closing arguments, he presents those questions. And I think he – I think, contrary to Petitioner's view, does not use this statement as a central part of his. The statement was not the key or the central or the defining evidence in this case. There is other evidence of gang-relatedness and gang involvement. Well, the statement doesn't tell you who did it. No, it doesn't. But it does present a motive why this guy got it. Yes, but the gang testimony, the gang expert testimony also does that. And that would have been introduced as well. The gang expert testified to exactly, with or without this statement, testified to the exact scenario that occurred here, that there was a. . . But isn't the problem with the gang expert statement, it's based in part on the testimony. In other words, the idea here is retaliation. But without this statement, you don't have evidence of a motive for retaliation. Otherwise, it's just Tuesday in gang land, right? But without this statement, there are other statements by memo that aren't at issue here about retaliation as well. And by other witnesses. And I think that's outlined not only in the California Court of Appeals opinion, but also in my brief, that there were other links to the retaliatory issue here. And I'm not sure that that is crucial. I think that the circumstantial evidence is strong enough that the motive was gang-related and doesn't have to be as specific as retaliatory for this particular issue. Does that make sense? Any further questions? Okay. Thank you, counsel. Thank you. So many things to address. With respect to prejudice, I think I've adequately covered the issues in my briefing. The State completely ignored our opening brief, which walked through each element of the circumstantial case. I'd like to, for one moment, focus on the three facts that they had undisputed. One was that my client had a .38 caliber gun a couple days before the murder, and that .38 was used in the murder. But the evidence was that that was Chente's gun, and whoever was with Chente would be holding the gun. Chente didn't hold his own guns. So the question is, who was with Chente on that night, not who was holding the gun two days before. Don't they say something when they're burning their clothes and laughing around, something like you finally got it or something like that? Well, I would agree. That is the State's theory, that my client was out there and that they were laughing about Chente's death. But that is based on very scant, conflicting evidence. And prejudicial error review is de novo review. You have to look at the evidence that supports these positions, and the evidence that supports those positions is weak. For example, the men who were out there went in a car that was not my client's car. My client was used for these guys as their driver. If they didn't need a driver, they didn't need my guy there. And also the individual who testified that my client was there had never met him before, was not introduced to him then, and a couple days later got in the car and kissed him on the cheek. Prejudicial error is something we've covered. We just have to show an influence over the jury, and certainly argued extensively in closing argument. The State's circumstantial case was weak. This was the only evidence of motive. In addition, my time is up.
judges: Thomas, Callahan, Roth